## COCA-COLA CO. v. BROWN.

No. 701.

District Court, M. D. Pennsylvania.

July 19, 1932.

Harold Hirsch & Marion Smith and Frank Troutman, all of Atlanta, Ga., and Knapp, O'Malley, Hill & Harris, of Scranton, Pa., for plaintiff.

J. Julius Levy and Frank J. McDonnell, both of Scranton, Pa., for defendant.

WATSON, District Judge.

This is a suit for an injunction for unfair trade practice and for an accounting.

The court finds the following facts:

1. Plaintiff is engaged in the manufacture and sale of a syrup and beverage made therefrom, under the trade-mark "Coca-Cola."

2. Continuously from the year 1886 down to the present time, the plaintiff and its predecessors in business have, to the exclusion of all other persons, used the name "Coca-Cola," as a trade-mark distinguishing its product from the product of all other manufacturers, and plaintiff is now using said trade-mark. The name "Coca-Cola" was new and distinctive at the time of its adoption in or about 1886, and designates origin of the product of the plaintiff, and for many years has been universally recognized by the public as indicating exclusively the plaintiff's product; the name has become and is so associated with the plaintiff's product that it means a single thing coming from a single source, well known to the community, and any person using said name in-

tends and expects to receive the product of the plaintiff.

3. Plaintiff and its predecessors, by the expenditure of a total of more than $35,-000,000 in advertising its product Coca-Cola and by proper manufacturing methods, have established a valuable reputation therefor. The value of plaintiff's good will and business represented thereby is in excess of $100,000,000.

4. Plaintiff sells its product in bulk to be dispensed as Coca-Cola over the soda fountain, and every package shipped by plaintiff has the name "Coca-Cola" thereon.

5. In the manufacture of its said syrup, plaintiff has at all times colored same by the use of caramel, which imparts to the syrup a distinctive color, and is used solely for that end and purpose, and is a decorative feature of the syrup and not structural, and the drink is, in part, necessarily recognized and distinguished by said color. It is impossible for any one desiring to purchase Coca-Cola to ascertain from a mere inspection, whether or not the article offered is genuine Coca-Cola or an imitation, provided the general appearance of the product as to color and consistency is similar to Coca-Cola.

6. Defendant is the proprietor of a soda fountain at his store at No. 401 North Washington avenue, Scranton, Pa.

7. Defendant received at his store Coca-Cola syrup in original, unopened, and sealed packages through plaintiff's authorized distributor, Scranton Tobacco Company, as shipped by the plaintiff from its factory in Baltimore.

8. Several samples of liquid in response to calls for Coca-Cola were purchased at defendant's store by agents of the plaintiff company on different dates.

9. Samples taken from defendant's store on calls for Coca-Cola when analyzed, showed that the ingredients were not in the same percentage as to the whole as found in Coca-Cola syrup as manufactured by plaintiff.

10. The defendant, on calls for Coca-Cola, sold to some asking for Coca-Cola a product which was not Coca-Cola as manufactured by the plaintiff.

In Coca-Cola Company v. Brown & Allen (D. C.) 274 F. 481, 482, the court said:

"He may also sweeten it by adding sugar, if that is desired by his customer, or he may similarly add anything else the customer desires. He may even develop a peculiar and popular mixture, which may make his Coca-Colas known and sought as such. But can he,

with no claim made to the public of a distinctive mixture, and relying solely on the reputation of Coca-Cola as developed by its maker, deceptively dilute and cheapen it for the additional profit to be thus made? Such conduct is immediately a fraud on the purchasing public. It is also a fraud of which the maker may complain, because it tends to disrupt that connection between him and the purchasing public, built up at large expense and through a long time, which the law recognizes and protects as a good will, indirect and intangible though the connection be.

"There seems to be nothing in the way of defendants selling weak Coca-Colas, or sweet ones, if they will; but it ought to be openly done. The syrup drawn in the customer's presence on his call for Coca-Cola ought to be the unadulterated article. That it is such is the fair intendment of the transaction. The customer understands the syrup drawn to be what he calls for. What is afterwards added by way of dilution or spiking he sees, and is not deceived by it. If defendants should put one-half quantity in the glass, instead of half strength, in serving Coca-Cola, it would be at once seen. The conclusion is inescapable that the dilution was made before the syrup was drawn, and concealed as to consistency and color by sugar and carmel, in order to deceive the purchaser as to its strength, and not in order to make weak or sweet Coca-Colas. Against the continuance of this practice petitioner is entitled to protection. If it is not done to deceive, defendants can have no objection to stopping it."

In Elgin National Watch Company v. Illinois Watch Case Company, 179 U. S. 665, 21 S. Ct. 270, 274, 45 L. Ed. 365, it was held that: "The manufacturer of particular goods is entitled to the reputation they have acquired, and the public is entitled to the means of distinguishing between those and other goods; and protection is accorded against unfair dealing, whether there be a technical trademark or not. The essence of the wrong consists in the sale of the goods of one manufacturer or vendor for those of another."

### Conclusions of Law.

1. The actions of the defendant, his agents, servants, and employees, constituted an unfair practice for which the plaintiff is entitled to equitable relief.

2. The plaintiff is entitled to a permanent injunction, as prayed for in the bill of complaint, and to an accounting.

Now, July 19, 1932, the defendant, his agents, employees, servants, and representa-

tives, are enjoined and restrained from drawing from the fountain or other container, for the purpose of mixture and sale of Coca-Cola, any syrup other than the unaltered and unadulterated syrup made by plaintiff and known as Coca-Cola; and it is further ordered that a decree be entered in favor of the plaintiff for such damages as plaintiff is entitled to, and reference will be made to a master to take an accounting as to the damages.